**IN THE SUPREME COURT OF TENNESSEE**
**AT JACKSON**
(HEARD AT SAVANNAH)



**FILED**

**June 21, 1999**

Cecil Crowson, Jr.
Appellate Court Clerk

**FOR PUBLICATION**

MONTRO TAYLOR,                         )
                                       )
        Appellant,                     )
                                       )
Vs.                                    )
                                       )
                                       )
STATE OF TENNESSEE,                    )
                                       )
        Appellee,                      )
                                       )
AND                                    )
                                       )
ROBERT IRWIN GWIN,                     )
                                       )
        Appellee,                      )
                                       )
Vs.                                    )
                                       )
STATE OF TENNESSEE,                    )
                                       )
        Appellant.                     )

**Filed: June 21, 1999**

Supreme Court
No. 02S01-9806-CR-00054

Hon. Chris B. Craft,
Judge

SHELBY COUNTY

Court of Criminal Appeals
Affirmed.


Hon. Joe B. Brown, Jr.,
Judge

SHELBY COUNTY

Court of Criminal Appeals
Reversed.

**FOR TAYLOR AND GWIN:**
Marti L. Kaufman
MONROE, KAUFMAN & McGHEE
Memphis, Tennessee

**FOR STATE OF TENNESSEE:**
John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Gordon W. Smith
Associate Solicitor General
Nashville, Tennessee

William L. Gibbons
District Attorney General
30th Judicial District

# O P I N I O N


COURT OF CRIMINAL APPEALS
AFFIRMED AS TO TAYLOR; REVERSED AS TO GWIN;
POST-CONVICTION PETITIONS DISMISSED.          DROWOTA, J.

The sole issue in this consolidated appeal is whether a sentence imposed under a statute which was subsequently declared unconstitutional by this Court constitutes an illegal sentence, which is void, and may be challenged and corrected at any time without regard to the post-conviction statute of limitations. Because the statute had not been declared unconstitutional prior to the time the sentences were imposed, the sentences are not illegal and thus void. They are instead voidable sentences which must be challenged within the time prescribed by the post-conviction statute of limitations. Since the petitions in this case were filed beyond the applicable three-year post-conviction statute of limitations, the trial courts properly dismissed the petitions. Accordingly, the judgment of the Court of Criminal Appeals modifying Gwin's sentence to life imprisonment is reversed and the judgment of the trial court dismissing the petition is reinstated. The judgment of the Court of Criminal Appeals affirming the trial court's dismissal of Montro Taylor's petition is affirmed.[1]

# I.

## FACTUAL BACKGROUND

### A. Robert Gwin

On January 5, 1972, an employee of a grocery store in Memphis was shot and killed during a robbery of the store. Robert Gwin was tried for the murder, and on May 21, 1973, a Memphis jury found Gwin guilty of first degree murder in the perpetration of a felony and sentenced him to 100 years imprisonment. On

---

[1] Oral arguments were heard in this case on April 15, 1999 in Savannah, Hardin County, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project. This Court appointed Marti L. Kaufman to represent the petitioners in this appeal. The Court appreciates Ms. Kaufman's willingness to accept this appointment and the excellent representation she has provided the petitioners.

appeal, the conviction and sentence were affirmed. Gwin v. State, 523 S.W.2d 636 (Tenn. Crim. App. 1975), cert. denied (Tenn. 1975). Four years later, in January of 1979, former Governor Ray Blanton commuted Gwin's sentence to time served. On April 21, 1994, the Tennessee Board of Pardons and Paroles regained custody of Gwin from the Georgia Department of Corrections due to an alleged commutation violation. On December 20, 1994, then Governor Ned McWherter revoked Gwin's commutation thereby reinstating the original 100-year sentence.

On November 11, 1995, Gwin filed a pro se petition for post-conviction relief challenging the validity of his sentence on the ground that the statute under which it was imposed had been declared unconstitutional by this Court. The trial court dismissed Gwin's petition, and Gwin appealed. Relying upon State v. Burkhart, 566 S.W.2d 871, 873 (Tenn. 1978), in which this court stated that an illegal sentence is void and may be challenged and corrected at any time, the Court of Criminal Appeals reversed the trial court's judgment, held the petition was not time-barred by the post-conviction statute of limitations, and modified Gwin's sentence to life imprisonment. Thereafter, we granted the State's application for permission to appeal.

### B. Montro Taylor

On December 19, 1971, Montro Taylor, Hugh Briggs, and an unidentified accomplice robbed a supermarket in Memphis and killed the produce manager of the store. On July 1, 1976, Taylor and Briggs were convicted of murder in the perpetration of a robbery. The jury imposed a 199-year sentence for each murder

conviction, and this Court affirmed the convictions and sentences on appeal. Briggs v. State, 573 S.W.2d 157 (Tenn. 1978).[2]

On January 27, 1997, Taylor filed this, his first petition for post-conviction relief challenging the validity of his sentence on the ground that it was imposed pursuant to a statute that had been declared unconstitutional by this Court. The trial court dismissed the petition, and the Court of Criminal Appeals affirmed the dismissal, concluding that the petition is time-barred by the post-conviction statute of limitations.

Taylor filed an application for permission to appeal, which we granted and consolidated with the State's appeal in Gwin. We must now determine whether a sentence imposed under a statute later declared unconstitutional by this Court is (1) void and illegal and subject to being corrected at any time regardless of the post-conviction statute of limitations or (2) voidable and subject to the post-conviction statute of limitations.

## II.

### LEGAL BACKGROUND

To place this issue in context, we will briefly summarize the historical

---

[2]The defendants were also convicted of armed robbery, but this Court vacated the robbery convictions after concluding that dual convictions for felony murder and the underlying felony violate double jeopardy principles. This portion of the decision in Briggs was subsequently overruled in State v. Blackburn, 694 S.W.2d 934 (Tenn. 1985).

events which culminated in this Court's decision in Miller v. State, 584 S.W.2d 758 (Tenn. 1979), that declared the statute under which the petitioners were sentenced unconstitutional.

Prior to 1829, the common law crime of murder in Tennessee was punishable only by a sentence of death. Bratton v. State, 29 Tenn. (10 Hum.) 102, 105-06 (1849). In 1829, the General Assembly enacted a statute which divided the crime into first and second degree murder, with the death penalty reserved as the punishment for first degree murder. 1829 Tenn. Pub. Acts 23. The 1829 Act also provided that "[e]very person convicted of the crime of murder in the first degree, or as accessory before the fact to such crime, shall suffer death by hanging by the neck." Id. at § 4. In 1913, the method of execution was changed from hanging to electrocution. 1913 Tenn. Pub. Acts 36. Two years later, in 1915, the General Assembly abolished the death penalty for murder and replaced it with a mandatory sentence of life imprisonment. 1915 Tenn. Pub. Acts 181. However, the death penalty was reinstated as a possible punishment for first degree murder four years later, in 1919, by a statute which afforded the jury discretion to impose the death penalty, or if mitigating circumstances were found, the jury had discretion to impose a sentence of life imprisonment or imprisonment for any term over twenty years. 1919 Tenn. Pub. Acts 5, §1.

Both Gwin and Taylor were sentenced pursuant to the provisions of the 1919 Act which were in effect at the time these offenses occurred in 1971 and 1972.

In June of 1972, the United States Supreme Court held the Georgia death penalty statute violative of the Eighth Amendment's prohibition against cruel and unusual punishment because it entrusted the life or death decision to the unfettered discretion of the jury. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The Georgia statute was representative of the other death penalty statutes in effect throughout the country, including Tennessee.

Responding to the Furman decision, the General Assembly in 1973, enacted a law creating a new capital sentencing scheme which, among other things, revised the possible punishments for first degree murder to death, life imprisonment, or imprisonment for some period over twenty-five years. 1973 Tenn. Pub. Acts 192. However, in 1974, this Court struck down the 1973 Act as violative of Article II, § 17 of the Tennessee Constitution because its provisions embraced more than one subject and not all of the subject matter was set forth in the caption. State v. Hailey, 505 S.W.2d 712 (Tenn. 1974).

In response to Hailey, the General Assembly passed legislation which amended the definition of first degree murder and mandated a death penalty for all persons convicted of first degree murder and for all persons convicted as an accessory before the fact of first degree murder. 1974 Tenn. Pub. Acts. 462. The 1974 Act was held unconstitutional by this Court in Collins v. State, 550 S.W.2d 643 (Tenn. 1977), because the United States Supreme Court, in three decisions, had invalidated, as violative of the Eighth and Fourteenth Amendments, similar statutes prescribing a mandatory sentence of death. See Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); Roberts v.

<u>Louisiana</u>, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976); <u>Williams v. Oklahoma</u>, 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215 (1976).

The <u>Collins</u> court explained that its decision declaring the 1974 Act unconstitutional had the effect of reviving the non-death penalty sentencing provisions of the 1919 Act, which allowed a jury to sentence a person convicted of first degree murder to life imprisonment or some other period of imprisonment over twenty years. Two years later, however, in 1979, this Court in <u>Miller</u> held the entire 1919 Act invalid because the Act did not have a severability clause which allowed this Court to elide the death penalty provisions and uphold the non-capital sentencing provisions. <u>Miller</u>, 594 S.W.2d at 765. The <u>Miller</u> court explained that its holding had the effect of reviving the 1915 Act which provided a mandatory sentence of life imprisonment for all persons convicted of first degree murder. <u>Id.</u> Accordingly, this Court's 1979 decision in <u>Miller</u> struck down the 1919 statute under which Gwin had been sentenced to a 100-year term in 1973 and Taylor had been sentenced to a 199-year term in 1976.

## III.

### VOID OR VOIDABLE SENTENCES

In this appeal, the State contends that the petitioners' sentences are not illegal because the 1919 statute was presumptively constitutional at the time the sentences were imposed. Therefore, the State argues that the sentences are not void and subject to being corrected at any time, but are, instead, merely voidable

and subject to being corrected only if challenged in a timely post-conviction petition. Since the post-conviction petitions in these cases were filed beyond the statute of limitations, the State argues that the claims are time-barred and should not be considered. In contrast, Taylor and Gwin argue that the State is imposing an overly narrow interpretation onto State v. Burkhart, 566 S.W.2d 871, 873 (Tenn. 1978). According to the petitioners, a sentence is illegal and void if the statute under which the sentence is imposed is subsequently declared unconstitutional by this Court.

There are two primary procedural avenues available in Tennessee to collaterally attack a conviction and sentence which have become final -- habeas corpus and post-conviction. These procedural vehicles are theoretically and statutorily distinct. Potts v. State, 833 S.W.2d 60, 62 (Tenn. 1992). The right to seek habeas corpus relief is guaranteed by Article I, § 15 of the Tennessee Constitution.[3] The procedures applicable to seeking the writ are codified at Tenn. Code Ann. §§ 29-21-101 et seq. Significantly, there is no statutory time limitation which applies to bar the filing of a writ of habeas corpus. However, in Tennessee grounds upon which habeas corpus relief will be granted are very narrow. The writ will issue "only when 'it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered' that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment or other restraint has expired." Archer v. State, 851 S.W.2d 157, 164 (Tenn. 1993) (quoting State v. Galloway, 45 Tenn. (5 Cold.) 326,

_____

[3]Article I, § 15 of the Tennessee Constitution provides that "the privilege of the writ of Habeas Corpus shall not be suspended, unless when in case of rebellion or invasion, the General Assembly shall declare the public safety requires it."

336-37 (1868)). In other words, a habeas corpus petition may only be utilized to successfully contest void, as opposed to voidable, judgments. Potts, 833 S.W.2d at 62. A void judgment is one in which the judgment is facially invalid because the court lacked jurisdiction or authority to render the judgment or because the defendant's sentence has expired. Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998); Archer, 851 S.W.2d at 161-64.

In contrast, the authorized avenue for attacking a voidable judgment is a petition for post-conviction relief. State v. McClintock, 732 S.W.2d 268, 272 (Tenn. 1987). A voidable conviction or sentence is one which is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity. Dykes, 978 S.W.2d at 529; Archer, 851 S.W.2d at 161-64. Recognizing the narrow scope of relief available under the writ of habeas corpus, the General Assembly, in 1967, enacted the Tennessee Post-Conviction Procedure Act which is now codified at Tenn. Code Ann. §§ 40-30-201 et seq.[4] Unlike habeas corpus petitioners, persons filing a post-conviction petition may challenge convictions that are alleged to be either void or voidable because of the abridgement of constitutional rights. Tenn. Code Ann. § 40-30-203 (1997 Repl.) [previously codified at Tenn. Code Ann. § 40-30-105 (1982 Repl.) (repealed 1995)]; Potts, 833 S.W.2d at 62. Also unlike habeas corpus, there is a statute of limitations which governs the filing of post-conviction petitions.[5]

---

[4]Prior to 1995, the Post-Conviction Procedures Act was codified at Tenn. Code Ann. 40-30-101 et seq.

[5]The current statute of limitations is one year. See Tenn. Code Ann. § 40-30-202 (1997 Repl.). This statute was adopted in 1995 and replaced the three-year statute of limitations which is applicable in this appeal. Tenn. Code Ann. § 40-30-102 (1982 Repl.) (repealed 1995).

We emphasize, however, that the statute of limitations for filing post-conviction petitions in no way precludes the filing of petitions for habeas corpus which contest void judgments. Even if a post-conviction petition is dismissed as untimely, a prisoner may assert in a petition for a writ of habeas corpus that his conviction is void or that he is being illegally or wrongfully restrained. Potts, 833 S.W.2d at 62.

Considering these well-settled principles of law, it is clear that the dispositive issue in this case is whether the petitioners' sentences are void or voidable. If the sentences are void, they may be contested, without regard to the post-conviction statute of limitations, by way of a petition for writ of habeas corpus. However, if the sentences are voidable, they may only be challenged by the filing of a petition for post-conviction relief which is subject to the statute of limitations.

In this Court, the petitioners primarily rely upon this Court's decision in Burkhart as support for their argument that the sentences are void and illegal and subject to correction without regard to the post-conviction statute of limitations. Id., 566 S.W.2d at 873. The State responds that a sentence is void and illegal under Burkhart only if the sentence is in direct contravention of a statute in existence at the time the sentence is imposed. We agree with the State's contention.

In Burkhart, the defendant escaped from prison while the appeal of his burglary conviction was pending. Burkhart was apprehended and pled guilty to the offense of escape, and the judgment of conviction provided that the sentence

-10-

be served concurrently with the sentence for the burglary conviction. However, the judgment was in direct contravention of a statute[6] which required that a sentence for an escape conviction be served consecutive to the sentence for the original offense. The statute was in effect at the time the trial court purported to impose a concurrent sentence on Burkhart's escape conviction.

After receiving notice from the Department of Corrections that he would be required to serve a consecutive sentence in accordance with the statute, rather than the concurrent sentence imposed by the trial court judgment, Burkhart filed a pro se "petition" and asked the trial court to order the Department of Corrections to comply with the judgment imposing a concurrent sentence. The trial court noted the statute requiring consecutive sentencing and dismissed Burkhart's petition. The Court of Criminal Appeals reversed and held that a trial judge could not correct a judgment after it had become final.

This Court granted review and reversed the decision of the Court of Criminal Appeals stating,

> In holding as it did, the court below relied on <u>Stinson v. State</u>, 108 Tenn. 159, 344 S.W.2d 369 (1961). That reliance was misplaced. In <u>Stenson</u>, the court correctly refused to alter a judgment that, although incorrect, was in conformity with applicable statutes and had become final. We are not faced with that situation here, for in the instant case the judgment entered in the trial court on October 10, 1975, was in direct contravention of the express provisions of T.C.A. § 39-3802, and consequently was a nullity. As a general rule, a trial judge may correct an illegal, as opposed to a merely erroneous, sentence at any time, even if it has become final.

566 S.W.2d at 873. In our view, this language clearly indicates that a sentence is

------

[6]Tenn. Code Ann. § 39-3802 (1975 Repl.) (repealed 1989).

-11-

void and illegal only if it is in direct contravention of a statute which is in existence at the time the sentence is imposed. Such an interpretation also is consistent with this Court's discussion of void judgments in Archer. There, we considered the case of Henderson v. State ex rel. Lance, 220 Tenn. 520, 419 S.W.2d 176 (1967), and observed that the judgment in Henderson was void because the trial court had no legal authority to impose a concurrent sentence when a statute mandated a consecutive sentence. 851 S.W.2d at 163. Our research reveals that in all cases where a sentence has been held illegal and void under Burkhart, the sentence directly contravened a statute in existence at the time it was imposed. See e.g. State v. Burris, 950 S.W.2d 42, 43 (Tenn. Crim. App. 1996) (split-confinement service of a sentence in excess of five years is illegal where the statute only allowed for split-confinement service of sentences five years or less); Taylor v. Morgan, 909 S.W.2d 17, 20 (Tenn. Crim. App. 1995) (concurrent sentence illegal in the face of a statute mandating consecutive sentencing); State v. Clayton, 480 S.W.2d 922 (Tenn. Crim. App. 1971) (grant of parole void where statute precluded parole for felonies involving a sentence in excess of ten years and the robbery conviction at issue had a possible sentence of fifteen years).

The petitioners have not cited, and our research has not revealed, a single case holding that a sentence is illegal under Burkhart because the statute under which the sentence was imposed was later declared unconstitutional in another case. One Tennessee decision which addresses a similar issue supports the opposite proposition.

In Bowen v. State, 488 S.W.2d 373 (Tenn. 1972), this Court considered

-12-

whether the decision of the United States Supreme Court in <u>Furman</u> automatically

invalidated Bowen's death sentence. In concluding that <u>Furman</u> did not result in

an automatic invalidation, this Court stated:

> The answer to the . . . question must be that the judgments entered by the United States Supreme Court in the *Furman, Jackson,* and *Branch* cases <u>had no direct effect whatsoever on the judgment in this case.</u>

> * * * *

> There is no case in point to cite in support of this statement. It is supported, however, by accepted fundamental rules of law relating to the finality of judgments. This proposition is stated in 46 Am.Jur.2d, Judgments, § 14, p. 322, this way:

>> Indeed, it is a general principle that where a court has jurisdiction over the person and the subject matter, and the judgment rendered is not in excess of the jurisdiction or power of the court, no error or irregularity can make the judgment void. <u>Such a judgment may be, under proper circumstances, voidable, but until avoided is regarded as valid.</u>

488 S.W.2d at 375 (emphasis added).


Applying these well-settled principles of law to the facts in this case, it is

clear that the petitioners' sentences are not void and illegal. When Taylor and

Gwin were sentenced, the trial courts had jurisdiction, and the sentences imposed

plainly were not in excess of the punishments authorized by the 1919 Act. The

1919 Act was presumptively constitutional until declared unconstitutional by this

Court's decision in <u>Miller</u>.[7] While a trial court has no legal authority to impose a

---

[7]Every act of the General Assembly is presumptively constitutional until condemned by judicial pronouncement. <u>See</u> e.g. <u>State ex rel Barker v. Harmon</u>, 882 S.W.2d 352, 356 (Tenn. 1994); <u>Franks v. State</u>, 772 S.W.2d 428, 431 (Tenn. 1989); <u>Cumberland Capital Corp. v. Patty</u>, 556 S.W.2d 516, 540 (Tenn. 1977); <u>Claybrook v. State</u>, 164 Tenn. 440, 51 S.W.2d 499 (1932); <u>Roberts v. Roane County</u>, 160 Tenn. 109, 23 S.W.2d 239 (1929).

-13-

sentence that is contrary to governing law,[8] a sentence imposed in accordance with the statute in effect at the time of its imposition is not void merely because the statute is later declared unconstitutional. Such a sentence is instead voidable if timely challenged in a post-conviction proceeding.[9]

Therefore, we must next determine if the petitions in these cases were timely filed within the three-year post-conviction statute of limitations. As originally enacted in 1967, the Post-Conviction Procedure Act contained no statute of limitations. However, effective July 1, 1986, the General Assembly adopted a three-year statute of limitations which provided:

> A prisoner in custody under a sentence of a court of this state must petition for post-conviction relief under this chapter within three (3) years of the date of the final action of the highest state court to which an appeal is taken or consideration of such petition shall be barred.

Tenn. Code Ann. § 40-30-102 (1982 Repl.) (repealed 1995); Carter v. State, 952 S.W.2d 417, 418 (Tenn. 1997). This statute was judicially given prospective application only. See e.g. Abston v. State, 749 S.W.2d 487, 488 (Tenn. Crim. App. 1988). Therefore, any person whose judgment became final on or before July 1, 1986, had until July 1, 1989, to file a petition for post-conviction relief challenging a void or voidable judgment. Carter, 952 S.W.2d at 418.

Returning to the facts of this case, we note that the "date of the final action of the highest state appellate court" in Gwin's case was May 12, 1975, when this

---

[8]Dykes, 978 S.W.2d at 529; Archer, 851 S.W.2d at 161-64; Bowen, 488 S.W.2d at 375.

[9]Cf. State ex rel. Newsom v. Biggers, 911 S.W.2d 715 (Tenn. 1995) (convictions rendered by a judge who was not elected in accordance with state law are not void); Bankston v. State, 908 S.W.2d 194 (Tenn. 1995) (convictions rendered by a municipal judge not elected in accordance with the Tennessee Constitution are not void).

Court denied review. The "date of the final action of the highest state appellate court" in Taylor's case was November 20, 1978, when this Court rendered its decision in Briggs. Even assuming that Gwin and Taylor did not become aware of the ground for relief upon which they now rely until April 2, 1979, when this Court rendered its decision in Miller, Gwin had more than fourteen years and Taylor had more than ten years within which to file a petition for post-conviction relief before the three-year statute of limitations expired in 1989.[10] Yet, Gwin did not file a petition until November 16, 1995, over six years after expiration of the three-year statute of limitations. Taylor did not file a petition until January 27, 1997, more than seven years after the three-year statute of limitations had expired.[11] Clearly, the petitions were filed beyond the applicable statute of limitations.

Moreover, this is not a situation in which due process precludes strict application of the three-year statute of limitations. See e.g. Sands v. State, 903 S.W.2d 291 (Tenn. 1995); Burford v. State, 845 S.W.2d 204 (Tenn. 1992). As this Court explained in Sands, due process prohibits the strict application of the three-year statute of limitations when the ground for relief, whether legal or factual, arises after the point at which the limitations period would normally have begun to

---

[10]The fact that Gwin's sentence was commuted by Governor Blanton on January 15, 1979, does not affect our analysis. Even though he was not incarcerated in Tennessee, Gwin's commutation was conditional and subject to being revoked. Accordingly, he was entitled to file a post-conviction petition under this Court's decision in State v. McCraw, 551 S.W.2d 692 (Tenn. 1977), in which we defined the phrase "in custody" in the post-conviction statute of limitations to mean "any possibility of restraint on liberty." Id. at 694; see also Albert v. State, 813 S.W.2d 426, 427 (Tenn. 1991) (declining to reverse McCraw).

[11]In fact, by the time Gwin and Taylor filed their petitions, the three-year statute of limitations had been repealed and replaced by the one-year statute of limitations which became effective in May of 1995. Tenn. Code Ann. § 40-30-202 (1997 Repl.). This Court held in Carter, 952 S.W.2d at 418, that the new one-year statute does not provide an additional year to file post-conviction petitions to persons, such as Taylor and Gwin, for whom the statute of limitations expired before the effective date of the new statute.

-15-

run.  The ground for relief upon which the claims in this appeal are based arose when this Court rendered its decision in <u>Miller</u> in 1979.  The three-year statute of limitations did not begin to run with respect to either Gwin or Taylor until July 1, 1986, seven years after <u>Miller</u> was decided.

We also reject the argument that Governor McWherter's revocation of Gwin's commutation constitutes a "later-arising" ground for relief.  As previously stated, Gwin's claim that his sentence is unconstitutional arose when this Court rendered its decision in <u>Miller</u>.  The claim is not derived from the revocation of commutation.  Gwin cites no authority to support the proposition that the statute of limitations was tolled during the time he was released pursuant to the commutation.  Indeed, the holding in, <u>McGraw</u>, 551 S.W.2d at 694, supports the opposite proposition.  Since the conditional commutation constituted a possible restraint on his liberty, Gwin was "in custody" for purposes of the post-conviction statute of limitations.  Therefore, he was both entitled and required to file a petition within the applicable statutory time period.  <u>See</u> Footnote 10, <u>supra</u>.

Moreover, the Post Conviction Procedure Act is a mechanism by which final court judgments may be challenged.  Indeed, the three-year statute of limitations specifically accrued upon "the date of the final action of the highest state appellate <u>court</u> to which an appeal is taken."  Tenn. Code Ann. § 40-30-102 (1982 Repl.) (repealed 1995).  The Act is not designed or intended to allow a prisoner to challenge a Governor's decision to revoke a commutation.   In fact, this Court recently stated in <u>Carroll v. Raney</u>, 953 S.W.2d 657, 659 (Tenn. 1997), that the Governor's power to grant commutations is limited only by the language in the

-16-

State Constitution and may not be regulated or controlled by other branches of government.

We also recognized in Carroll that, in exercising commutation power, the Governor is not bound by the statutes which would bind courts and juries. We specifically held in Carroll that the Governor had the power to grant a commuted sentence of "22 years to life" even though the applicable statutes precluded a court or a jury from imposing an indeterminate sentence for the offense. In so holding, we specifically approved a decision of the Court of Criminal Appeals, State v. Fields, 925 S.W.2d 561 (Tenn. Crim. App. 1996), in which the Governor had commuted a death sentence to a term of 99 years. As in this case, the petitioner in Fields, sought post-conviction relief on the basis that the only other legally effective sentence for first degree murder at the time of his conviction was life imprisonment. In Carroll, this Court quoted with approval the following rationale, relied upon by the intermediate court in Fields to reject the petitioner's claim:

> The only sentence that could legally have been ordered by a judge or jury was life imprisonment. We conclude, however, that these cases and the law set forth therein do not and cannot restrict the constitutional authority of the Governor to commute a defendant's sentence to a term less than life. . . .

Carroll, 953 S.W.2d at 661 (quoting Fields, 925 S.W.2d at 563). This same reasoning applies to the facts in Gwin's appeal. Though, under Miller, a person being sentenced today in court for a first degree murder committed at the time the 1919 Act was in effect could only receive a sentence of life imprisonment, "these cases and the law set forth therein do not and cannot restrict the constitutional authority of the Governor to commute a defendant's sentence." Id.

-17-

Therefore, since the claims asserted by the petitioners are not later-arising, they do not fall within the rule announced in <u>Burford</u> and applied in <u>Sands</u>. Accordingly, the petitions for post-conviction relief filed by Gwin and Taylor clearly are time-barred by the post-conviction statute of limitations.

## CONCLUSION

Because the petitioners' sentences are voidable rather than void and because the petitioners failed to challenge their sentences within the time provided by the three-year post-conviction statute of limitations, the trial courts properly dismissed the petitions. Accordingly, the judgment of the Court of Criminal Appeals modifying Gwin's sentence to life imprisonment is reversed and the judgment of the trial court dismissing the petition is reinstated. The judgment of the Court of Criminal Appeals affirming the trial court's dismissal of Montro Taylor's petition is affirmed.

It appearing that the petitioners in this cause are indigent, costs will be paid by the State of Tennessee.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**
Anderson, C.J.
Birch, Holder, Barker, JJ.